IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BOGIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 5887 |
| | ) | |
| PAWS CHICAGO, ROCHELLE MICHALEK, | ) | |
| HEATHER NEWCOMB, and SHANNON | ) | |
| GILLEN,[1] | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Robert Bogie alleges in a five-count complaint that defendants PAWS Chicago and its employees Rochelle Michalek, Heather Newcomb, and Shannon Gillen, failed to hire him because he is a man. (Dkt. No. 1 ("Compl.").) Bogie alleges sexual discrimination (Count I) and retaliation (Count II) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, "contract fraud" (Count III), intentional infliction of emotional distress (Count IV), and negligent infliction of emotional distress (Count V). Currently pending before the court is the defendants' motion to dismiss all counts against Michalek, Newcomb, and Gillen, and Counts III, IV, and V against PAWS Chicago. (Dkt. No. 9.) For the reasons explained below, that motion is granted.

BACKGROUND[2]

Defendant PAWS Chicago ("PAWS") is a shelter for homeless pets located in Chicago that

---

[1] The complaint misspelled Shannon Gillen's name as "Gillian." (*See* Dkt. No. 10, at 1.) The court has corrected the caption and will use the correct spelling throughout this opinion.

[2] The following facts are drawn from the complaint, the allegations of which the court must accept as true. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

employs defendants Rochelle Michalek, Heather Newcomb, and Shannon Gillen. (Compl. ¶¶ 3-6.) Bogie applied for a job as a Volunteer Manager at PAWS on April 1, 2011. (*Id.* ¶ 18.) PAWS sent Bogie a rejection letter on April 5 stating that it chose not to hire him because of his lack of experience in volunteer management. (*Id.* ¶ 19.) In August, however, Bogie learned that the person hired to be the Volunteer Manager was a woman who also did not have experience in volunteer management. (*Id.* ¶¶ 20-21.) Bogie then "made the defendants aware of the situation." (*Id.* ¶ 21.) PAWS did not respond, but instead told the woman it had hired to remove her resume from the internet and to "de-friend" Bogie on Facebook. (*Id.*)

Bogie then filed an internal complaint of discrimination with PAWS. (*Id.* ¶ 22.) In response, PAWS told Bogie that it found no discrimination, and explained that it had lowered the responsibilities of the position to which Bogie had applied so that the woman it had hired was qualified. (*Id.*) Thereafter Bogie threatened to file a charge of discrimination with the EEOC, but agreed to delay filing with the EEOC after PAWS's executive director and HR director[3] agreed to meet with him. (*Id.* ¶ 23.) During the meeting Bogie agreed to "hold off on" filing with the EEOC in return for an employment interview with PAWS for a position as a part-time animal care technician, "a position far below the stature of the position where the alleged discrimination occurred." (*Id.* ¶ 24.)

Approximately one month later, Bogie received three interviews for a total of fifteen minutes with Michalek and other unspecified individuals who were part of PAWS's "management." (*See id.* ¶¶ 26-28.) During the interviews, which Bogie alleges "never really became in depth,"

---

[3] Although the complaint does not specify the identity of these individuals, the court assumes that the executive director and the HR director are two of the individual defendants in this case (that is, Michalek, Gillen, or Newcomb).

Michalek repeatedly told Bogie that he should check PAWS's website for more job listings. (*Id.* ¶¶ 27-28.) In between the first and the second interview, PAWS posted a position "of similar level to the one where the alleged discrimination occurred," but refused to interview Bogie for the position. (*Id.* ¶ 29.)

PAWS did not hire Bogie, and on November 1, 2011, Bogie filed a complaint with the EEOC. (*Id.* ¶ 31.) Shortly thereafter, PAWS told Bogie that they would not hire him for several other "Animal Care positions" because he was not qualified, although Bogie felt he was qualified for the positions. (*Id.* ¶¶ 31-32.) Bogie alleges that the defendants' attorney "outright lied" to the EEOC in its position statement. (*Id.* ¶ 33.) As a result of Bogie's complaint, PAWS has forbidden him to return to PAWS as a volunteer. (*Id.* ¶ 34.)

LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

ANALYSIS

I.     Title VII Claims of Discrimination (Count I) and Retaliation (Count II)

Defendants move to dismiss the Title VII claims against Michalek, Newcomb, and Gillen, because a plaintiff cannot recover for a Title VII claim against a supervisor in her individual capacity. The defendants are correct that supervisors, in their individual capacity, are not "employers" under Title VII, and thus are not susceptible to suit under Title VII. *See Williams v. Banning*, 72 F.3d 552, 553-54 (7th Cir. 1995); *see also Jacobeit v. Rich Tp. High Sch. Dist.*, 673 F. Supp. 2d 653, 659 (N.D. Ill. 2009) (Holderman, C.J.). Consequently, the court dismisses Counts I and II as to Michalek, Newcomb, and Gillen.

II.     "Contract Fraud" (Count III)

Count III of Bogie's complaint alleges that the defendants are liable for "contract fraud." "Contract fraud" is not a recognized cause of action under state or federal law. Nonetheless, Bogie's response in opposition to the motion to dismiss makes it plain that he intended to assert a claim for breach of contract (*See* Dkt. No. 13, at 3), and the court will construe Count III as such. Under Illinois law "the elements of a breach of contract cause of action are (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir.2007) (citations and quotation marks omitted).

The only potential contract apparent from the complaint is an oral contract that allegedly

-4-

arose from Bogie's meeting with the executive director and the HR director. At that meeting, Bogie alleges that PAWS promised to give him an interview for a position as a part-time animal care technician in return for his promise to "hold off on" filing his complaint with the EEOC. (Compl. ¶ 24.) The defendants contend that those promises lacked terms with sufficient definiteness to be enforceable as a contract, and the court agrees. Illinois law provides that "a contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain *what the parties have agreed to do*." *Ass'n Benefit Servs.*, 493 F.3d at 850 (citation and quotation marks omitted). Stated another way, "[a] contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004). Here, the obligations on both sides of the alleged contract are too vague to be enforced. Bogie's promise to "hold of on" filing his EEOC complaint, for example, does not specify how long he must delay. On the other side, the promise to interview Bogie does not specify the length of the interview, the individuals who must take part in the interview, or the content of the interview.

Moreover, even if there were a contract obligating PAWS to interview Bogie, the complaint indicates that PAWS did interview him three times (Compl. ¶ 28-30), so Bogie has failed to allege a breach of the contract. The complaint also includes allegations implying that the interviews failed to satisfy the requirements of the contract, including allegations that the interviews lasted only fifteen minutes, that the interviews never addressed the requirements of the position "in depth," and that Michalek suggested Bogie would not be hired by telling him to continue to check the website

for other job listings. (*Id.* ¶¶ 27-29.) The ambiguity of the contract as alleged, however, prevents the court from ascertaining whether those facts constitute a breach of the agreement. *See DiLorenzo*, 807 N.E.2d at 678 (terms are too indefinite to be enforced when there is "no basis for deciding whether the agreement has been kept or broken"). Accordingly, Bogie's "contract fraud" claim in Count III is dismissed.

III.    Intentional Infliction of Emotional Distress (Count IV) and Negligent Infliction of Emotional Distress (Count V)

The defendants argue that Count IV and V of Bogie's complaint should be dismissed because they are preempted by the Illinois Human Rights Act ("IHRA"), which gives the Illinois Human Rights Commission exclusive jurisdiction over civil rights violations. 775 ILCS 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). In support, the defendants point to *Quantock v. Shared Marketing Services, Inc.*, 312 F.3d 899, 905 (7th Cir. 2002), which held that a claim of intentional infliction of emotional distress based on the same facts as an accompanying sexual-harassment claim under Title VII was preempted. *Id.* Subsequently, however, the Seventh Circuit has elaborated that "claims of intentional infliction of emotional distress are not categorically preempted by the IHRA." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 603 (7th Cir. 2006). Moreover, the test is not whether the allegedly preempted claim and the civil rights claim arose from the same set of facts. *Id.* at 602-03. Instead,

> [t]he distinction between claims that are preempted by the IHRA and claims that are not preempted turns on the legal duty that the defendant allegedly breached; "that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it."

*Id.* at 604 (alteration and internal quotation marks omitted) (quoting *Krocka v. City of Chi.*, 203 F.3d 507, 516-17 (7th Cir. 2000)). In other words, to avoid preemption, Bogie must be able to "prove the elements of intentional infliction of emotional distress independent of legal duties furnished by the IHRA," *id.*, and he must be able to prove the elements of negligent infliction of emotional distress in the same manner. Accordingly, the court must determine if Bogie's claims for intentional and negligent infliction of emotional distress could succeed assuming that PAWS did not have an obligation to avoid discriminating in its hiring based on sex—the legal duty provided by the IHRA. *Id.* at 602 ("A violation of the IHRA includes employment discrimination based on sex or handicap." (citing 775 ILCS 5/1-103(I), (O), (Q); *Id.* 5/1-102(A))).

In this case, the answer to that inquiry is no for both the intentional and negligent infliction of emotional distress claims. Under Illinois law, "[c]ourts are cautious in their treatment of emotional distress claims in the employment domain, because if 'discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action.'" *Safi v. Royal Jordanian Airlines*, No. 08 C 7365, 2010 WL 4339434, at *4 (N.D. Ill. Oct. 25, 2010) (quoting *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. Ct.1999)). Accordingly, Illinois courts have held that even a wrongful discharge based on a prohibited category like age "is not sufficiently outrageous or extreme to sustain a claim of intentional infliction of emotional distress." *Id.* (citing *Stoecklein v. Ill. Tool Works, Inc.*, 589 F. Supp. 139, 146 (N.D. Ill.1984); *Fang v. Village of Roselle*, No. 95 C 5175, 1996 U.S. Dist. LEXIS 9512 (N.D. Ill. June 28, 1996)). Moreover, "[f]ailing to hire . . . does not amount to conduct that is extreme and outrageous." *Pierela v. Vill. of N. Aurora*, No. 95 C 4048, 1996 WL 166942, at *7 (N.D. Ill. Apr. 4, 1996) ("Allegations of a discrimination claim, on its own, usually will not support

a claim for intentional infliction of emotional distress."). Similarly, Illinois courts have not imposed a general duty on employers to avoid causing harm to potential employees through their hiring and firing decisions, so there is no basis for a negligence claim. *See Sommers v. Household Int'l, Inc.*, No. 98 C 4539, 1999 WL 1285858, at *9 (N.D. Ill. Dec. 30, 1999) (citing cases and holding that "[t]he harm cannot be the plaintiff's loss of his job, since people lose jobs every day, and it is such a normal occurrence that to place the burden on an employer to guard every employee against the stress accompanying the loss of a job would be just too great"). In short, Illinois does not provide a cause of action for emotional distress in the circumstances Bogie has alleged apart from the legal duty deriving from the IHRA to avoid discriminatory hiring. The court will thus dismiss Bogie's emotional distress claims in Counts IV and V because they are preempted by the IHRA.

IV.     Other Potential Claims

        Although Bogie does not include a formal count alleging § 1983 and § 1981 claims, his complaint mentions those statutes. (Compl. ¶ 15.) To the extent that the complaint raises claims based on § 1983 and § 1981, they are dismissed. Any § 1981 claims fail because sex-based discrimination is not actionable under § 1981.  *Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1317 (7th Cir.1984). Any § 1983 claims must be dismissed because the defendants are not acting under the color of state law.  *See Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005).

CONCLUSION

        For the reasons stated above, the defendants' motion to dismiss (Dkt. No. 9) is granted.  All counts against Michalek, Newcomb, and Gillen are dismissed, and Counts III, IV, and V against PAWS are dismissed. The only remaining counts are Counts I and II against PAWS. Counsel for

defendants are to confer with plaintiff pursuant to Rule 26(f) and jointly file a Form 52 on or before

12/4/12. The case is set for status and entry of a scheduling order at 9:00 AM on 12/6/12. The parties

are encouraged to discuss settlement.

ENTER:

_James F. Holderman_

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: November 15, 2012